IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JAMES RUSSELL CUDE                                                          PLAINTIFF

v.                                                    CIVIL ACTION NO. 4:23-cv-9-SA-DAS

MODINE GRENADA LLC, d/b/a
Modine Manufacturing Company                                               DEFENDANT

ORDER AND MEMORANDUM OPINION

On January 17, 2023, James Russell Cude initiated this civil action by filing his Complaint
[1] against Modine Grenada LLC, d/b/a Modine Manufacturing Company ("Modine"). The
Complaint [1] brings an age discrimination claim under the Age Discrimination in Employment
Act ("ADEA"), 29 U.S.C. § 621, *et seq*. Before the Court is Modine's Motion for Summary
Judgment [33]. The Motion [33] has been fully briefed and is ripe for review. Having considered
the parties' filings, as well as the applicable authorities, the Court is prepared to rule.

*Relevant Background*

In 2016, Modine acquired Cude's former employer, Luvata, Inc. As a result of the
acquisition, Modine hired Cude, who was 57 years old at the time, as a Director of Engineering at
its Grenada, Mississippi plant. This was the same title he held at Luvata. In this role, and similar
to his duties at Luvata, Cude generally supervised product engineers and other personnel in
Modine's heat exchanger coils group.

Initially, Cude reported to Mike Heidenreich—also a former employee of Luvata who
joined Modine after the acquisition. When Heidenreich retired, Cude began reporting to Mark
Johnson, who at that time was Modine's Engineering Manager for Americas. Johnson oversaw the
heat exchanger coils group as well as the coolers and codings groups from an engineering
perspective. Shortly thereafter, Johnson was promoted to Director of Engineering CIS.

Johnson and Dennis Appel, then-president of the business unit, considered Cude for the Engineering Manager CIS for Americas position (Johnson's former role). Other candidates, one of whom was Joseph Stevenson, were also considered. This process was informal, and an internal decision was made for Stevenson to fill the position. Cude's compensation was not impacted by Stevenson's transition.

In January 2019, Johnson met with Cude to inform him that Stevenson would be assuming a supervisory position over Cude and that Cude would report to Stevenson from that point forward. Johnson also asked Cude about his retirement plans during this meeting. In response, Cude expressed that he had no plans to retire and enjoyed working.

Stevenson is ten years younger than Cude. Prior to this new role, Stevenson was an engineering section manager in Modine's product development group in Racine, Wisconsin. Stevenson's duties in his new position as Engineering Manager CIS for Americas included overseeing Cude's work in the coils group. He also had managerial responsibilities in the coolers group and a small portion of the codings group.

Thereafter, in October 2020, Cude's title changed from "Director-CIS Product Engineering" to "Product Engineering Manager-Coils." *See* [33], Ex. A, at p. 91. Following this title change, Cude continued to report to Stevenson and was the only manager in the coils group directly reporting to Stevenson.

On March 25, 2022, Modine terminated Cude. Stevenson and Michael Howell, Modine's Grenada human resources manager, informed Cude that his position was being eliminated due to the company's restructuring. At his deposition, Johnson testified that the objective of Modine's restructuring plan was to achieve a "verticalized business structure" where the different business groups—coils, coolers and codings—operated with "dedicated resources" rather than shared

2

resources. *See* [33], Ex. 3 at p. 18, 30.[1] A total of seven employees, including Cude, were terminated by Modine in 2022.

Modine's Vice President and General Manager of Heat Transfer Products, Mike Postma was the decision-maker as to which positions were to be eliminated at Modine's Grenada facility. He determined that there was a redundancy in managerial positions within engineering and wanted only one engineering leader in coils. Ultimately, Postma made the decision to eliminate Cude's position and retain Stevenson. Following Cude's termination, Stevenson took over Cude's responsibilities and no longer oversaw the coolers and codings groups as part of the restructuring.

Cude thereafter filed suit, alleging that Modine terminated him due to his age.[2] In its present Motion for Summary Judgment [33], Modine contends that Cude was terminated solely due to the restructuring. Cude opposes the Motion [33].

<em>Summary Judgment Standard</em>

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct.

---

[1] The parties also refer to these different groups as business "verticals." *See* [34] at p. 2.
[2] At the time of his termination, Cude was 63 years old.

2548). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

As noted, Cude asserts an ADEA claim against Modine, alleging that he was unlawfully discriminated against because of his age when he was terminated.

Under the ADEA, an employer cannot "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see also Rachid v. Jack In The Box, Inc.,* 376 F. 3d 305, 308–09 (5th Cir.2004). "To establish an ADEA claim, the plaintiff must show that his age was the 'but for' cause of his termination—proving that age was a 'motivating factor' for the decision is not enough." *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009) (additional citations omitted)). A plaintiff may prove that age was a "but-for" cause of his termination with direct or circumstantial evidence. *Id.* at 455-56.

4

"Direct evidence of discrimination…prove[s] the existence of a fact…without any inferences or presumptions." *Id*. at 456 (quoting *Bodenheimer v. PPG Indus., Inc*., 5 F. 3d 955, 958 (5th Cir. 1993)). "Most often, direct evidence takes the form of a discriminatory statement directly connected to the plaintiff's discharge." *Id*.

When a plaintiff offers no direct evidence of age discrimination, the *McDonnell Douglas* burden-shifting framework applies. *Id.* The burden is first on the plaintiff to establish a prima facie case of age discrimination. *Id.* If the plaintiff establishes a prima facie case, there is a presumption of discrimination, and the burden shifts to the defendant to "articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 356 (5th Cir. 2007). "The burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)). If the defendant articulates a legitimate, non-discriminatory reason, "the plaintiff must rebut the employer's purported explanation by showing that the reason given is merely pretextual." *McMichael*, 934 F. 3d at 456.

I.      *Prima Facie Case*

"Reductions in force usually involve an employer's decision to eliminate positions and as a result layoff multiple employees." *Zhan v. Univ. of Mississippi Med. Ctr.*, 2016 WL 5374141 (S.D. Miss. Sept. 26, 2016) (citing *Bellaver v. Ouanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000)).

"In a reduction-in-force case, a plaintiff makes out a *prima facie* case by showing (1) that he is within the protected age group[3]; (2) that he has been adversely affected by the employer's decision; (3) that he was qualified to assume another position at the time of the discharge; and (4)

---

[3] The ADEA protects from discrimination persons at least 40 years of age. *See* 29 U.S.C. § 631(a).

'evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" *Lay v. Singing River Health Sys.*, 694 F. App'x 248, 253-54 (5th Cir. 2017) (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F. 3d 38, 41 (5th Cir. 1996)).

As to the fourth element, in cases when the employer does not plan to replace the discharged plaintiff, the plaintiff must show that "'others who were not members of the protected class remained in similar positions' or that [he] was 'otherwise discharged because of [his] age.'" *Moore v. N. Bolivar Consol. Sch. Dist.*, 2024 WL 2925748, at *2 (N.D. Miss. June 10, 2024) (quoting *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999)).

Modine does not dispute that Cude can satisfy the first three elements of his prima facie case—particularly, that he is within the protected age group, that he was adversely affected by being laid off, and that he was qualified to assume another position at Modine at that time. However, Modine takes issue with the fourth element and specifically contends that Cude "can produce no competent evidence from which a factfinder might reasonably conclude that [Modine] intended to discriminate in reaching its decision to eliminate his position and terminate his employment." [33] at p. 1.

In response, Cude argues that Modine's decision to retain Stevenson over Cude in eliminating redundant managerial positions establishes the fourth element. The Court notes that, while Stevenson is ten years younger than Cude, Stevenson was 53 at the time Cude was terminated and is therefore also a member of Cude's protected class. Consequently, Cude must make his prima facie case by showing that he was terminated "because of [his] age." *Bauer*, 169 F.3d at 966. Nonetheless, a prima facie case "is fairly easily made out." *Amburgey v. Corhart Refractories Corp.*, 936 F. 2d 805, 812 (5th Cir. 1991).

6

Stevenson himself testified that, in his personal opinion, he and Cude were in competition for retainment and that he took over all of Cude's duties after Cude's termination as part of the reorganization:

> Q.     Okay. As far as the decision to terminate that, were you involved in that decision-making process at all?
>
> A.     It was—I'll answer that no. Essentially, it would have been a situation where, you know, we have two managers kind of at the – you know, in similar positions within the company. So, I guess, I would say I was almost in competition with Russ[4] as to who was going to be, you know, retained and who was not going to be retained, because the position was eliminated. This idea of the CIS structure was going away, so you couldn't have someone with double responsibility like I had. So everybody had to kind of fit into – we call them verticals—as we reorganized. And there was kind of no crosstalk between verticals.
>
> Q.     I guess I will have to ask you a little bit. You say you and Mr. Cude were kind of in competition for who would stay. Was that something that someone expressed to you or just kind of your personal opinion?
>
> A.     No. That would be my personal opinion, you know. You could see what was happening from an organizational structure that – like I said, we went from a structure where you had a lot of global people, like a global director of quality, a global director of manufacturing engineering. I didn't have global in my title, but I was, you know, an engineering manager responsible for multiple things, and that whole organizational structure is going away.
>
>        …
>
> Q.     I think you touched on this, but I just want to ask it again so that way I can make sure that I've got my head wrapped around it. For the responsibility and roles that Mr. Cude had when he was terminated, how were those reorganized? Did all those responsibilities come to you?
>
> A.     That's right.

---

[4] The parties refer to Cude as "Russ" as an abbreviation of Cude's middle name—Russell.

[33], Ex. D at p. 16-18, 19.

Although cognizant that Modine contends that Stevenson is not a proper comparator since he was Cude's supervisor and had different responsibilities and experience, the Court finds critical Stevenson's own testimony that he believed he was in competition with Cude for retainment and that he assumed Cude's job responsibilities. Viewing this evidence in the light most favorable to Cude, and considering the low evidentiary threshold at this stage of the proceedings, the Court finds that Cude has carried his burden. *See Amburgey*, 936 F. 2d at 811 ("[I]t is relatively easy…for a plaintiff to establish a prima facie case"); *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 825 (5th Cir. 2022) (describing a plaintiff's prima facie burden as "very minimal"); *see also Hoang v. Microsemi Corp.*, 2023 WL 2346244, at *3 (5th Cir. Mar. 3, 2023) (finding a prima facie case was established by plaintiff in a reduction-in-force case where plaintiff's duties were overtaken by a retained employee 12 years younger).

II.       *Legitimate Nondiscriminatory Reason*

At Postma's deposition, he testified that Cude was terminated because his position was eliminated in Modine's restructuring for being redundant. The parties do not dispute that this satisfies Modine's burden to put forth a legitimate, nondiscriminatory reason for terminating Cude. *See Lay*, 694 F. App'x at 254 ("Eliminating positions amidst department restructuring is legitimate and non-discriminatory") (citing *Berquist v. Wash. Mut. Bank*, 500 F. 3d 344, 356–57 (5th Cir. 2007)); *see also EEOC v. Tex. Instruments, Inc*., 100 F. 3d 1173, 1181 (5th Cir.1996) (noting that a reduction in force is a legitimate, non-discriminatory reason for discharge). Thus, the narrow question before the Court is whether this reason is pretextual.

III.    *Pretext*

The burden shifts back to Cude to "present enough evidence for a reasonable jury to believe that [the employer's] reasons are a pretext for unlawful discrimination." *McMichael*, 934 F. 3d at 456-57. "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Laxton v. Gap Inc.*, 333 F. 3d 572, 578 (5th Cir. 2003) (citations and internal quotations omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Id*. (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F. 3d 893, 899 (5th Cir.2002)).

Cude must present evidence that is "of sufficient 'nature, extent and quality' to permit a jury to reasonably infer discrimination." *Owens*, 33 F.4th at 826 (quoting *Crawford v. Formosa Plastics Corp., La.*, 234 F. 3d 899, 903 (5th Cir. 2000)). And crucially, Cude must provide more than a "mere scintilla" of evidence to show that real reason for his termination was his age. *Id*. at 834. "It is not enough to permit a reasonable inference that *some* reason other than the proffered one motivated the adverse employment action." *Id*. (citing Reeves, 530 U.S. at 148, 120 S. Ct. 2097) (emphasis in original). "An aggrieved employee's evidence must, at the summary-judgment stage, permit a reasonable inference that the real reason was impermissible discrimination." *Id*. (citing *Sandstad*, 309 F. 3d at 899).

i.    *Unworthy of Credence*

As noted, "[p]retext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020). "Evidence of 'inconsistent explanations and the absence of clear criteria' in an employer's decisionmaking can be enough to survive summary judgment if, under the facts of a particular case, that inconsistency and lack of criteria could lead

to a reasonable inference of pretext." *Owens*, 33 F.4th at 830-31 (quoting *Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 528 (5th Cir. 2022)).

From the outset, Modine argues that Cude's position was eliminated due to the company's restructuring and because it determined "that it would be redundant to have two manager-level positions within the engineering function of the [coils] vertical." [34] at p. 3.

Cude points to the following circumstantial evidence from which, he argues, a jury can infer discriminatory intent: 1) evidence of inconsistencies in Postma's criteria for eliminating employee positions as well as his lack of knowledge of Stevenson and Cude's respective experience with Modine, 2) evidence of Modine's job listings for engineering positions following his termination, and 3) statistical evidence that Modine only terminated employees over the age of 40 from the Grenada plant.[5]

As to the first argument, Cude first points to Postma's deposition testimony to counter Modine's reasoning behind choosing to eliminate his position and retain Stevenson. Postma was the decision-maker in eliminating Cude's position.[6] He testified that the motivating factor for terminating Cude was the redundancy of his position and Stevenson's as engineering managers:

---

[5] Notably, Stevenson was promoted to the Engineering Manager CIS for Americas position in February 2019—at which time Cude became his subordinate—approximately three years before Cude was terminated in March 2022. Cude contends that Modine created a redundancy in his and Stevenson's position when Stevenson was promoted in 2019 and that a jury could infer that the redundancy was not the real reason for his termination because Modine created the situation in order to terminate him. Cude testified that Modine hired Stevenson so that Stevenson could learn Cude's job and eventually replace him. However, the Court notes that Cude does not provide evidence besides mere speculation to support this contention, nor does he cite any relevant caselaw. As noted, speculation and unsubstantiated assertions are insufficient to overcome summary judgment. *See Nabors*, 2019 WL 2617240 at *1 (additional citations omitted). Accordingly, it is not necessary for the Court to further address this argument.

[6] In his Response Memorandum [38], Cude alleges that Postma "could not say for sure that *age* was not a determining factor in termination decisions." [38] at p. 4. However, the Court notes that Cude takes Postma's testimony out of context. When asked about whether experience had any bearing on what employees were terminated, Postma testified "I don't recall whether or not, you know, age was the determining factor for each employee -- or experience rather." [33], Ex. B at p. 19. Postma immediately retracted his reference to age. Thus, the Court will move on to address the relevant testimony pertaining to Postma's reasoning.

> Q.    Okay. So when it came down to terminating Mr. Cude's position, what was the motivating factor for you in terminating that position?
>
> A.    The motivating factor was the relevancy of having two manager positions within engineering.

[33], Ex. 2 at p. 10.

Postma testified that he was looking for a "global corporate operator," like Stevenson, versus "a siloed complaint site manager," referring to Cude. *Id*. Postma also testified that Cude was not qualified for the position Stevenson held because of Cude's "lack of understanding and history within the global Modine organization." *Id*. at p.11. In comparing the two, Postma appears to have differentiated between them based on experience:

> Q.    And so, I'm trying to figure out what do you mean by Mr. Cude didn't understand that part of Modine?
>
> A.    Mr. Stevenson has a deep and intimate knowledge of not only the global, you know, heat transfer products organization, but the potential synergies and understanding of sister division[s] within the company with which we'd want to be working with.
>
> Q.    So what made you come to that conclusion? Was it an experience factor, an education factor, or just kind of a gut feeling?
>
> A.    No, that's an *experience factor*. Joe has had a long history within the global Modine organization and have [sic] used two different elements, where Mr. Cude's position and history was limited to, I would say, Luvata's -- Legacy Legacy [sic] scope, if you will.

*Id*. at p. 11-12 (emphasis added).

As noted previously, when asked about the Grenada lay-off generally, Postma testified that he could not recall whether "experience" was a factor in determining which redundant positions

11

to eliminate. *Id*. at p.19. However, he went on to testify that experience was *not* a factor when asked about the list of employee terminations:

> Q.     I think what I asked was if experience may have been a determining factor in some cases?
>
> A.     Not that I'm aware of.

*Id*. at p. 20.

Ultimately, Postma was responsible for deciding which positions would be eliminated from the Grenada plant and testified that the decisions were generally based on the redundancy of positions but could not recall the "specific determining criteria" with the exception of Cude:

> Q.     You know, I've asked about whether it was experience, whether it was based off salary, and a few other factors. Can you point me to some factors that were used in determining which positions would be eliminated as opposed to which positions were kept?
>
> A.     As it relates to -- you know, as I stated earlier, outside of Mr. Cude I'm not aware of the specific determining criteria as to why a specific position over another was eliminated in terms of personnel.

*Id*. at p. 21.

Notably, Postma does not provide the specific criteria he used in deciding to terminate Cude other than referencing Cude's lack of understanding of Modine's global structure as compared to Stevenson. Based on this testimony, Postma's decision to eliminate Cude's position and retain Stevenson was seemingly based, at least in part, on their respective experience within Modine. However, Postma testified that he did not know when Stevenson was hired by Modine and that he had not reviewed Cude and Stevenson's resumes nor conducted interviews with them to familiarize himself with their experience or qualifications prior to reaching his decision. Instead, Postma testified that his understanding of Stevenson and Cude was based on "anecdotal

conversations" with unrecalled persons. *Id*. at p. 12. In short, Postma's apparent lack of knowledge as to Stevenson and Cude's respective experience with Modine casts doubt on whether experience was indeed the determining factor when it came to terminating Cude. *See Wade v. Lyondell-Citgo Ref.*, 2005 WL 8168888 (S.D. Tex. Dec. 20, 2005) ("[W]hen an employer offers subjective reasons to justify its termination of an employee, such as its finding that the terminated employee is 'not sufficiently suited for the job' or 'less qualified' than his colleagues, the employer must 'articulate in some detail a more specific reason than its own vague and conclusional feeling about the employee.'" (quoting *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004)).

Furthermore, in Modine's response to the EEOC charge, Karen Sutherland (Modine's Global Director of Human Resources) made the following assertion:

> Decisions on employee reductions are carefully considered, and based on: the specific needs required for certain roles compared to the demonstrated skills and experience of each employee; employee performance; and employee tenure.

[33], Ex. 2 at p. 30.

This directly contradicts Postma's testimony that experience was not a factor in determining reductions. The Court also finds it contradictory that Postma testified that experience was not a factor in deciding which redundant positions to eliminate yet it was apparently a consideration for Cude. The inconsistencies in Postma's reasoning for eliminating Cude's position, coupled with his lack of knowledge as to the criteria used for eliminating positions generally casts doubt on Modine's proffered reasoning.

Next, Cude argues that Modine sought applicants for jobs he was qualified to perform after his termination and that this too establishes pretext. Specifically, Cude alleges that "[t]he fact that this option existed could allow for a jury to infer that [he] was not terminated because his services were not needed by [Modine], but because [Modine] sought to cull out an older employee." [38]

13

at p. 6. Cude testified that he saw job listings by Modine on LinkedIn seeking senior engineers for their Racine, Wisconsin facility during the six-month period following his termination.[7]

In support of his contention that the job listings are evidence of discriminatory animus, Cude relies on *Young v. Harris Health Care, Inc.*, 226 F. 3d 643 (5th Cir. 2000). In *Young*, the Fifth Circuit explained that the plaintiff's position could have been restructured without firing her when analyzing whether a prima facie case had been made under the ADEA. *Id*. at *3. However, the court did not mention that as a basis for finding discriminatory intent and instead relied on other evidence unrelated to the ADEA claim when analyzing pretext. *Id*. at *4. This Court is therefore not persuaded by *Young*.

However, the United States District Court for the Southern District of Mississippi considered a similar issue in *Daniels v. City of Canton, Miss.*, 2011 WL 5040901 (S.D. Miss. Oct. 24, 2011), a Title VII reduction-in-force case. In *Daniels*, the plaintiff claimed that her employer's failure to consider her for available positions at the time she was terminated indicated discriminatory intent. *Id.* at *4. In rejecting this argument, the court recognized that various sister circuits have held that employers do not have a duty to transfer employees to other positions during a reduction in work force. *Id*. (citing *Pages–Cahue v. Iberia Lineas Aereas de Espana*, 82 F.3d 533, 538–39 (1st Cir.1996) ("Appellants cite no authority for the proposition that an employer conducting a reduction in force must offer such transfers or relocations [to lesser positions]-in-fact, authority exists for the proposition that employers face no such obligation."); *Jameson v. Arrow Co.*, 75 F.3d 1528, 1532 (11th Cir.1996) ("We emphasize that the ADEA does not mandate that employers establish an interdepartmental transfer program during the course of a RIF."); *Taylor v. Canteen Corp.*, 69 F.3d 773, 780 (7th Cir.1995) ("[T]he ADEA does not mandate that employers

---

[7] The Court notes that Cude managed senior engineers. He testified that had he been offered a senior engineering position, it would have been a demotion for him.

establish an interdepartmental transfer program during the course of a RIF; an employer incurs no duty to transfer an employee to another position when it reduces its work force for economic reasons.")). The Court sees no need to depart from this logic. As these authorities make clear, the ADEA imposes no obligation on an employer to transfer an employee when it reduces its workforce. The Court agrees and therefore rejects this argument and turns to Cude's third argument.

Finally, Cude points to statistical evidence of Modine's terminations at the Grenada facility in 2022. Statistical evidence may be probative of pretext in limited circumstances. *See Deloach v. Delchamps, Inc.*, 897 F. 2d 815, 820 (5th Cir. 1990) ("[Defendant] further claims that while statistical data may be used to establish a prima facie case, it cannot be used to establish pretext. While that may be true when that is the *only* evidence a plaintiff has to establish pretext, we do not believe the same rule applies when a plaintiff offers additional evidence") (emphasis added). "The probative value of statistical evidence ultimately depends on all the surrounding facts, circumstances, and other evidence of discrimination." *Tex. Instruments, Inc.*, 100 F. 3d at 1185 (citing *International Bd. of Teamsters v. United States,* 431 U.S. 324, 340, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977)).

Cude submits a list of all employees terminated by Modine in its reduction-in-force at the Grenada plant—all of whom were within Cude's protected class. In addition to Cude, six employees were terminated from the Grenada plant as part of Modine's restructuring and resulting reduction-in-force. Of the six, one employee was 47 and another was 53 years old. The remaining four employees were over the age of 60. *See* [37], Ex. 5. He argues that a jury could infer from this data that Modine intended to get rid of older employees under the guise of restructuring. In its Reply [41], Modine argues that this statistical evidence is non-probative because it represents only

15

a small sample size and there is no evidence that Modine's reorganization (and resulting reduction-in-force) disproportionately affected older employees.[8] Sutherland testified that this list represented only a portion of a master list she provided to the EEOC of employees terminated by Modine since 2016. Johnson testified that the list included the Grenada-related terminations in 2022. While it is true that statistical evidence based on small samples tends to lack probative value, *see Crim v. Helfer*, 77 F.3d 479, *2 (5th Cir. 1996), the Court is prohibited from weighing evidence at this stage.

Overall, there is contradictory evidence as to Modine's reasoning for terminating the employees at the Grenada facility. While the proffered reason is the redundancy of the positions, the decision-maker Postma testified he did not know the determining criteria for eliminating each position and specifically stated that experience was not a determinative factor. On the other hand, Modine submitted a detailed letter to the EEOC outlining its criteria, all which varied and included experience, as to each employee on the list. The terminated Grenada employees were all over the age of 40. In evaluating the surrounding facts, and viewing this evidence in light most favorable to Cude, a reasonable jury could infer age discrimination from viewing this list.

The Court is cognizant that "employment laws do not transform federal courts into human resources managers." *Owens*, 33 F.4th at 826. However, for the reasons articulated herein, the Court finds that Cude has come forward with sufficient evidence to preclude summary judgment.

---

[8] Notably, Johnson testified that he was aware of other employees who were terminated in addition to this list: "[a]nd I recall there being others. Maybe it's because they're outside of Grenada". [33], Ex. C at p. 25. He testified that the restructuring was companywide. However, it is unclear to the Court whether the *reductions* were in fact companywide. Postma, Stevenson, and Sutherland do not make a clarification in this regard either.

    *ii.   Disparate Treatment*

Finally, Cude appears to argue in his Response Memorandum [38] that evidence of disparate treatment exists and points to Stevenson, Johnson and McRee as comparators. "The 'simple test' for determining whether disparate treatment has occurred is 'whether the evidence shows treatment of a person in a manner which but-for that person's [protected characteristic] would be different.'" *Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006, 1014 (5th Cir. 2023) (quoting *City of L.A., Dep't of Water & Power v. Manhart*, 435 U.S. 702, 711, 98 S. Ct. 1370, 55 L. Ed. 2d 657 (1978)). The Fifth Circuit has previously explained that employees with different supervisors, who work for different divisions of a company or who have different work responsibilities are not similarly situated. *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (explaining the circumstances under which employees are similarly situated for purposes of an employment discrimination analysis). However, disparate treatment of less similarly situated comparators may be considered as "some evidence of pretext, even though it is less probative than evidence of a more similarly situated comparator." *Brown*, 969 F. 3d at 580 (citing *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 950 (5th Cir. 2015)).

Here, it is undisputed that Stevenson and Johnson were Cude's superiors at the time he was terminated. Johnson and Stevenson each had managerial responsibilities that differed from Cude's, who was a product engineering manager within the coils vertical. Johnson's duties included overseeing the coils, coolers, and codings verticals from an engineering perspective. As to Stevenson, he had managerial responsibilities not only over Cude in coils, but also in the coolers group until the time Cude was terminated. The Court does not find it appropriate to compare either Stevenson or Johnson to Cude for pretext purposes given their supervisorial positions. However,

Cude additionally points to Michael McRee, a peer-level manager also overseeing product engineering, as a comparator.

Cude argues that he was a more qualified product engineering manager than McRee who is younger and had "similar and overlapping job responsibilities" and was retained by Modine. [38] at p. 5.

Modine argues that McRee and Cude are not in any way comparable other than title. However, Stevenson testified that Cude and McRee "had similar levels of responsibility." *Id*. at p. 15. Stevenson also testified that McRee took over a new part of Modine's business named datacenter and has reported directly to Johnson since 2020:

> A.  And so, I mentioned Michael McRee, in September, [sic] of 2020 was promoted to a full-blown manager. And his -- he was going to take responsibility for this kind of virgining datacenter part of the business. And at that point, he started reporting directly to the director of engineering, Mark Johnson.
>
> And so, the reason that I wanted to take you down that path is that what was left in coolers -- so it was left with my responsibility at the time – was one senior level engineer and one designer is all that was left in the coolers part of the business. And then the coils part of the business was a little more staffed with engineers and designers and lab technicians.
>
> So as the company reorganized, there were a lot of changes happening, and so that's kind of how all that rolled together.
>
> …
>
> Q.  It sounds like you kind of shifted more towards coils?
>
> A.  Correct.
>
> Q.  Mr. McRee took over coolers.
>
> A.  Mr. McRee took over what's called datacenter. Coolers was left as a very small section of the company that didn't have

> a manager at that time because it didn't need a manager at that time. I mean, I'll tell you the numbers. I think there are about $5 million dollars worth of sales in North America. That doesn't justify much of an organizational structure.
>
> Q.    I see. And you said Mr. McRee moved into data centers around, you said, September of 2020?
>
> A.    Correct. And it wasn't that he moved somewhere. It was that the group he was working with sort of split off and a new part of the company was born.

*Id.* at p. 20-22.

While McRee reported to Johnson and managed engineers in the datacenter, Cude and McRee could be considered *less* similarly situated. Though they were both product engineering managers and had similar levels of responsibility, they worked in different departments.

As noted, Cude argues that he was a more qualified product engineering manager than McRee. In a reduction-in-force case, "[a] genuine issue of material fact exists when evidence shows the plaintiff was 'clearly better qualified' than younger employees who were retained." *Nichols*, 81 F. 3d at 42 (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F. 3d 955, 959 (5th Cir. 1993)). "However, this evidence must be more than merely subjective and speculative." *Id.* "To establish a fact question as to relative qualifications, a plaintiff must provide sufficiently specific reasons for his opinion; mere subjective speculation will not suffice." *Id.* "Greater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another." *Id.*

Stevenson testified that McRee was initially considered "one level down" from Cude's position based on Cude's experience level:

> Q.    And so, would you have equated Mr. Cude and Mr. McRee on the same level?

> A.    No. I would -- I would -- it is kind of confusing because I would consider Mr. McRee one level down. Russ has a title that's kind of equivalent to mine, but in a way he's sort of half a level down because I have more responsibility even though we're carrying the same title.
>
> …
>
> Q.    And I wanted to ask, you mentioned that you saw Mr. McRee as slightly below Mr. Cude. Why was that?
>
> A.    Why was that? I think that would have been, at that time, based on just his time with the business, his experience level. I can say -- I did try to do my homework, that in September of 2020 he was promoted to the same level. He was promoted at that point to an engineering manager.
>
> Q.    And when you say he was promoted, that was Mr. McRee?
>
> A.    Mr. McRee was promoted, yes.

[33], Ex. 4 at p. 12, 13-14.

Stevenson's testimony supports Cude's contention that he was more experienced than McRee though they eventually had similar levels of responsibility when McRee was promoted. However, in its letter to the EEOC, Modine states that McRee[9] has a "much different and more robust skill set than [Cude]" and that the datacenter "requires technology expertise not held by [Cude]." [33], Ex. 2 at p. 30.

In an attempt to prove that he was better qualified to retain a managerial position in engineering than McRee (who was not laid off), Cude testified as follows:

> Q.    You allege in your charge that there are three younger managers employed for Modine with similar jobs as yours. Who are you referring to?

---

[9] Notably, in its letter to the EEOC, Modine describes a "younger Product Engineering Manager in the Grenada, MS location" who is assigned to the datacenter vertical. [33], Ex. 2 at p. 30. While it does not refer to McRee by name, the Court presumes that it is McRee who is being referenced as he is similarly described by Cude and Stevenson in their deposition testimony.

A.      That would be Michael McRee, I'm talking about in the, in the coils engineering, not necessarily Grenada, just coils engineering.

Q.      Well --

A.      So that would be Michael -- go ahead, I'm sorry, what?

Q.      No, I'm sorry, that was my fault. Michael McRee worked in the data center; correct?

A.      Right. I think I misspoke. It's been so long I can't remember how they had the divisions broken up, because they changed them a lot.

        But basically in, in engineering, the things that, you know, I was capable of and things like that. For example, the job Michael McRee had over the data centers, I have managed and designed and launched new products much more complex than what, what that product did, you know. It was, it was just a simple water-cooled system. I've done the refrigeration systems, things like that. I could have, could have easily done, done that job.

        So Michael McRee –

Q.      But let me stop you right there. He was already doing that job though; correct?

A.      Michael was?

Q.      At the time that, at the time that your employment was terminated, Michael McRee was already doing that job in the data center?

A.      He was, yes.

Q.      All right. Go ahead.

A.      But I'm just, I'm trying to give you the names. So it was Michael McRee, Mark Johnson, and Joe Stevenson, all three doing similar jobs to mine, all three younger and less experienced.

[33], Ex. 1 at p. 57-59.

21

Cude provides a specific reason as to why he was clearly more qualified than McRee in that he managed, designed, and launched more complex products than the products produced in datacenters. Given that McRee was retained during restructuring, a reasonable jury could infer pretext. Again, recognizing that Cude and McRee are not completely similarly situated, this may present a weaker inference.

At this juncture, "the question is not whether [Cude] proves pretext, but rather whether [he] raises a genuine issue of fact regarding pretext." *Amburgey*, 936 F. 2d at 813. He has done so. Overall, considering the evidence casting doubt on Modine's proffered reason for terminating Cude, combined with statistical evidence, and the evidence of disparate treatment, a reasonable jury could infer discrimination. The Court finds that Cude has created a question of fact as to pretext and whether age was the reason for his termination.[10]

*Conclusion*

For the reasons set forth above, Modine's Motion for Summary Judgment [33] is DENIED. Cude will be permitted to proceed to trial on his age discrimination claim.

SO ORDERED, this the 10th day of December, 2024.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

[10] The Court acknowledges that Cude provided evidence through his deposition testimony that he was asked about his retirement plans by Johnson on more than one occasion. However, Cude does not raise this argument in his Response Memorandum [38] and therefore the Court sees no need to address it. See *Hensley v. Wal-Mart Stores Inc.*, 290 F. App'x 742, 743 (5th Cir. 2008) ("This court has consistently held that arguments not raised in response to a motion for summary judgment are waived…") (citing *Keelan v. Majesco Software, Inc.*, 407 F. 3d 332, 339-40 (5th Cir. 2005)).